**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case No.  3:23-sw-__86____ |
| INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT "skeebang_23" THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | **FILED UNDER SEAL** |

FILED
Jun 09 2023
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A
SEARCH WARRANT**

I, Mark D. Bartoszek, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with Instagram account "skeebang_23," henceforth referred to as the "Target Account," that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. (hereafter "Meta"), an electronic communications service and/or remote computing service provider headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Instagram to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the Target Account, as described in Attachment B.

2.      I am a Special Agent (SA) with the Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since November 2015. During the course of my employment with ATF, I have received training in the area of narcotics investigations, firearms trafficking, and other areas of criminal activity from the Department of Homeland Security Federal Law Enforcement Training Center, in Brunswick, Georgia.

3.      During my employment as a Law Enforcement Officer, I have focused on investigations regarding violations of the Gun Control Act with Title 18 of the United States Code. These investigations include, but are not limited to, firearms trafficking and illegal possession by prohibited persons, which have resulted in the seizure of firearms and criminal convictions in Federal courts.  During these investigations, I have participated in interviewing witnesses and cooperating sources regarding illegal firearms trafficking and have read official reports of similar interviews by other officers.  I have also participated in surveillance operations to observe and record movements of persons suspected of being involved in illegal firearms trafficking.  Prior to employment with ATF, I was employed by the United States Border Patrol as a Border Patrol Agent for approximately seven years in Arizona.  There, I was assigned to several different assignments including patrolling the international boundary between Mexico and the United States, mobile FLIR/Recon operator, and ATF liaison.

4.      During my employment with ATF, I have conducted and participated in several investigations involving Gun Control Act violations. Furthermore, I have been the affiant on search warrants and assisted in preparing affidavits for other affiants for numerous search warrants. As a case agent, I have experience in the fundamentals of firearms and narcotics trafficking.

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(1) (possession of ammunition by a convicted felon) and 18 U.S.C. § 922(o) (possession of a machinegun) have been committed by Dai'Quan Jarrvel LANE (B/M, DOB: 12/XX/1999). There is also probable cause to search the Target Account, as described more fully in Attachment A, for evidence, fruits, and instrumentalities of these violations, as described more fully in Attachment B.

## JURISDICTION

7.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court of the Eastern District of Virginia is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## PERTINENT STATUTES

8.     **Possession of Ammunition by a Convicted Felon**:  18 U.S.C. § 922(g) (1) provides that it is a crime to possess ammunition as a convicted felon.

9.     **Possession of a Machinegun**:  18 U.S.C. § 922(o) provides that it is a crime to possess an unregistered machinegun.

## PROBABLE CAUSE

10.     On February 1, 2023, at approximately 6:28 PM, Richmond Police Department ("RPD") officers observed an Instagram Live video[1] of Dai'Quan Jarrvel LANE (B/M, DOB: 12/XX/1999) posted from the Target Account, then using the username "ighateskee23." RPD officers knew from previous observations that the Target Account belonged to LANE and had observed LANE post and "go Live" from the Target Account on several other occasions. The Live had a stamp reading "Wednesday" and a time-stamp starting at approximately 6:28 PM, which matched the day and time officers were viewing the Live.

11.     In the Live, LANE wore a red varsity-style jacket with yellow lettering and a blue sweater underneath. On several occasions, LANE brandished a dark-colored firearm at the camera and then tucked the firearm in the front of his waistband between his body and outer layer of clothing. RPD officers knew from past encounters with LANE that he was a convicted felon and therefore prohibited from possessing a firearm.

12.     LANE has felony convictions for perjury (Hanover County, VA, February 2021) and felony probation violation (Hanover County, VA, August 2021).

---

[1] Instagram Live videos allow a user to stream a video in real-time. Other users may "join" the Live to view the video.



*Screenshots of LANE brandishing a firearm on the Target Account
on February 1, 2023.*

13.     Based on the characteristics of the background of the Live (white brick walls, while ceiling, and white painted water pipes in the kitchen and living room areas) and previous encounters with LANE, RPD officers believed LANE was inside of an apartment in Whitcomb Court in Richmond, Virginia, in the Eastern District of Virginia. The Live ended at approximately 6:32 PM. Officers responded to Whitcomb Court at approximately 6:42 PM and observed LANE walking in that area wearing the same clothes he was wearing in the Live.

14.     When officers exited their vehicle to speak with LANE, he fled on foot. The officer chasing LANE noticed he appeared to be holding the front of his waistband, the same area in which LANE was tucking a firearm during the Live.

15.    Officers ultimately apprehended LANE and recovered an iPhone from his person. RPD conducted a search of the area where LANE fled. On LANE's path of flight, on the side of a fence, officers found a privately made firearm (PMF) with a suspected automatic machinegun conversion device (a "switch") installed on the backplate. The switch changes a normally semi-automatic pistol into a fully automatic pistol capable of firing multiple shots continuously without reloading with a single pull of the trigger. The PMF also had a 30-round extended magazine that was loaded with 20 rounds of ammunition.

16.    An ATF interstate nexus expert determined the ammunition in the PMF was manufactured outside the Commonwealth of Virginia and therefore traveled in or affected interstate commerce prior to its recovery on February 1, 2023. Likewise, ATF Firearms Technology Criminal Branch examiners found that the switch affixed to the PMF constitutes a machinegun and that the PMF with the switch installed fired automatically with a single function of the trigger and is therefore a machinegun.

17.    In a post-*Miranda* interview, LANE stated the following:

    a.    That he is on state probation, and he is a convicted felon;

    b.    That the firearm in the Live video was a "prop;"

    c.    That he was the individual in the Live video RPD officers watched;

    d.    That he ran when he saw RPD because he is fearful of police;

    e.    That he did not know anything about the PMF recovered in Whitcomb Court;

    f.    That he actually found the PMF two months prior;

    g.    That he lent the PMF to an individual who returned it to him with a "button" (the switch);

h.   That he knew the switch was on the PMF and made it fully automatic; and

i.   That he was on his way to sell the PMF for approximately $750 before his arrest.

18.   I know, from my training and experience, that "button" is a slang term for a switch. Also, based on my training and experience, I believe the firearm in the Instagram video, which LANE claimed was a "prop," is a real firearm due to its characteristics.

19.   The PMF recovered appeared to be a different firearm than the firearm depicted in the Live video from February 1, 2023. However, a review of LANE's Instagram account showed that the PMF appeared to be the same firearm depicted in an Instagram post posted by LANE approximately six days prior to his arrest. In the Instagram post, LANE wore the same red jacket that he was wearing during the February 1, 2023, Live and subsequent arrest. He also held a firearm with a gray grip, a black side, and a visible switch, which matched the PMF with a switch recovered on February 1, 2023.



*Screenshots of LANE from the Target Account with a firearm matching the PMF recovered on February 1, 2023.*

20.    Shortly after LANE's arrest and release in the state, the Target Account changed its username from "ighateskee23" to "skeebang_23." The account appeared to be the same otherwise. I know, from training and experience and from conversations with other members of law enforcement, that it is not uncommon for individuals engaged in illegal activities to change the name of their Instagram or other social media accounts to avoid detection. I also know that changing the account name, or "handle," does not change the content of the account.

21.    On March 28, 2023, ATF personnel served Instagram with a preservation request pursuant to 18 U.S.C. § 2703(f) for the Target Account, which requires Instagram to preserve all information associated with the Target Account.

22.     United States Magistrate Judge Colombell authorized a criminal complaint against LANE on May 9, 2023, and ordered LANE detained pending trial on May 15, 2023. On May 17, 2023, a federal grand jury indicted LANE on one count of 18 U.S.C. § 922(g)(1) (possession of ammunition by a convicted felon) and one count of 18 U.S.C. § 922(o) (possession of a machinegun).

23.     On May 26, 2023, I conducted an Instagram query of the Target Account. The Target Account, still utilizing username "skeebang_23," was still active at that time.

24.     On June 7, 2023, I accessed the Target Account. Multiple stories had been posted within the past 24 hours, indicating that the Target Account is still being utilized, despite LANE being in federal custody. The posts are written in the first-person and suggest LANE is the author, or that LANE is directing the content of the posts. Because LANE still has access to the Target Account, either directly or indirectly, it is likely that the Target Account continues to contain evidence, fruits, and instrumentalities of LANE's pending federal charges, as described more fully in Attachment B.



*Screenshots of Instagram Live posts from the Target Account on or about June 7, 2023.*

## BACKGROUND CONCERNING INSTAGRAM

25.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

26.     Meta collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical

address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

27. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

28. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

29. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

30. Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to

avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

31.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

32.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

33.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

34.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear

on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

35.    An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

36.    Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

37.    Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

38.    Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and

retains payment information, billing records, and transactional and other information when these services are utilized.

39.    Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Meta retains records of a user's search history and followed hashtags.

40.    Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

41.    Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

42.    In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

43.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

44.     Proof of possession of firearms, ammunition, and/or machinegun conversion devices, especially by a convicted felon, is not limited to viewing photographs and/or videos on Instagram.  In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

45.     I know that the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. In this case, LANE displayed multiple firearms in his Instagram Lives and posts. LANE also admitted he was on his way to sell the PMF recovered on February 1, 2023, before being arrested. Based on my training and experience, conversations with other law enforcement officers, and information obtained during the investigation, individuals involved in illegally possessing firearms will share firearms with each other, discuss their possession of firearms, gather for social occasions where the firearms are present, and display the firearms in photographs and Instagram posts. Therefore, stored communications and files connected to an Instagram account may provide direct evidence of the offense under investigation.

46.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, messaging logs, photos, and videos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation. In this case, LANE has been in federal custody since May 15, 2023, and yet the Target Account continues to post content. In my training and experience, individuals involved in illegal activities, and those who utilize platforms like Instagram to further such illegal activities, will have an associate keep their page "active" to maintain credibility and/or customers, or share information when they cannot access it, or will find alternative means to continue accessing their account.

47.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement). Here, such information may indicate where LANE obtained a machinegun conversion device and/or other firearms, his intent to do so, and his future intentions with the firearms, ammunition, and machinegun conversion device.

48.     Other information connected to the use of Instagram may lead to the discovery of additional evidence.  For example, associated and linked accounts, stored communications, photos, and videos may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.  In addition, stored communications, contact lists, photos, and videos can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation. Here, LANE admitted to lending the PMF firearm to an associate and then intending to sell it. Such information would assist in identifying individuals that LANE offered to sell/lend firearms to, and/or how LANE obtained firearms, ammunition, and a machinegun conversion device.

49.     I know, from training and experience, that Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users. In this case, such information would assist in identifying who is presently using the Target Account, and who utilized the account at the time of the crimes alleged.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

50.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## **CONCLUSION**

51.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that violations, or attempted violations, of 18 U.S.C. § 922(g)(1) (possession of ammunition by a convicted felon), and 18 U.S.C. § 922(o) (possession of a machinegun) have been committed by LANE, using the Target Account, described more fully in Attachment A, and that that evidence, fruits, and instrumentalities, as described more fully in Attachment B, will be found in the Target Account. Therefore, I request that the Court issue the proposed search warrant.

52.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Instagram.  Because the warrant will be served on Instagram, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Mark Bartoszek
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me by reliable electronic/telephonic means on June 9, 2023.

/s/

HON. MARK R. COLOMBELL
United States Magistrate Judge
Eastern District of Virginia
Date: June 9, 2023

18

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with the Instagram profile currently using username "skeebang_23," and previously using username "ighateskee23," that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on or about March 28, 2023, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All business records and subscriber information, in any form kept, pertaining to the account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from January 1, 2023, to the present;

7.    Privacy and account settings, including change history; and

8.    Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B.    All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from January 1, 2023, to the present;

C.    All content, records, and other information relating to communications sent from or received by the account from January 1, 2023, to the present, including but not limited to:

1.    The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.    All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.    All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the account and other Instagram users from January 1, 2023, to the present, including but not limited to:

1.    Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.    All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.    All contacts and related sync information; and

4.    All associated logs and metadata;

E.    All records of searches performed by the account from January 1, 2023, to the present; and

F.     All location information, including location history, login activity, information geotags, and related metadata from January 1, 2023, to the present.

*Meta* is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## I.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon), and 18 U.S.C. § 922(o) (possession of a machinegun), that have been committed by Dai'Quan Jarrvel LANE (B/M, DOB: 12/XX/1999), using the Target Account, from January 1, 2023 to the present, including, for each username identified on Attachment A, information pertaining to the following matters:

(a) Communications/photographs involving possession/use/exchange/sale of firearms, firearm parts/components, machinegun conversion devices, and ammunition, to include any/all communications that utilize street slang in the reference of firearms/ammunition/machinegun conversion devices;

(b) Communications/photographs that detail the exchange of illegal firearms/ammunition/machinegun conversion devices in exchange for money and/or illegal narcotics;

(c) Communications/photographs regarding machineguns, unlawful modification of firearms and/or exchange of illegal firearm parts/components in reference to converting firearms into machineguns;

(d) Communications/photographs regarding purchasing/exchange of firearms/ammunition/machinegun conversion devices in connection with firearm trafficking;

(e) Communications/photographs regarding the possession/use/exchange/sale of firearms/ammunition/machinegun conversion devices in connection to/in furtherance of violent crimes, and the facts/circumstances surrounding such possession/use/exchange/sale and prospective/historical violent crimes;

(f) Evidence indicating how and when the Instagram account was created, accessed, and/or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner; and

(g) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

23

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____.   I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta.  The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**)].  I further state that:

a.       all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.       such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.       the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.       the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____

Date                                      Signature